IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Vincent Roland Kring, )<br>)<br>    Petitioner, )<br>)<br>v. )<br>)<br>United States of America, )<br>)<br>    Respondent. )<br>_____ ) | C.A. No.: 2:05-cr-134-PMD<br><br>**ORDER** |

This matter is before the court upon Petitioner Vincent Roland Kring's ("Kring" or "Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. The Government has filed a Motion to Dismiss Kring's § 2255 petition.[1] For the reasons set forth herein, the court grants the Government's Motion to Dismiss.

**BACKGROUND**

On February 9, 2005, Kring was indicted on two counts: (1) distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and (2) receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2). Assistant Federal Public Defender Robert Haley was appointed to represent Kring, and on August 8, 2005, Kring pled guilty to Count Two, receipt of child pornography, and Count One was dismissed.

Petitioner filed a Motion for New Counsel on or about September 23, 2005, but Magistrate Judge Kosko denied that motion on September 30, 2005. Kring's sentencing hearing was held on February 2, 2006, and the United States Probation Office prepared a Presentence Investigation Report ("PSR") which was also filed with the court on that day. Kring was sentenced to a term of

---

[1] Because the Government submitted an affidavit along with its Motion to Dismiss, the court will construe the motion as a Motion for Summary Judgment. *See* Fed. R. Civ. P. 12(d).

imprisonment for 210 months to be followed by a term of supervised release for five years. Kring did not file a direct appeal of his guilty plea or his sentence. He did, however, file a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 on or about November 5, 2007.

## STANDARD OF REVIEW

Kring proceeds under 28 U.S.C. § 2255, which provides, in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. On a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255, the petitioner bears the burden of proving the grounds for collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). In deciding a § 2255 motion, the court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The court has thoroughly reviewed the motion, files, and records in this case and finds that no hearing is necessary.

## ANALYSIS[2]

Kring asserts two grounds for relief in his § 2255 motion, but both assert he received ineffective assistance of counsel. Petitioner first argues his counsel was ineffective because Mr. Haley told him that the requested psychiatric evaluation was to determine whether he was insane or had a mental defect that would give him a defense. (*See* Pet. at 2.) Petitioner asserts, however, that while he was at the Federal Correctional Institution ("FCI") Butner for his evaluation, he found

---

[2]Although Kring filed a letter on or about February 8, 2008, stating that he agrees to summary judgment on his § 2255 motion, he states in that letter that he does so because he cannot present any evidence to support his claims. Because Kring signed his § 2255 motion under penalty of perjury, however, the court considers the merits of his arguments.

2

out that he was only being evaluated to determine if he was competent to stand trial, not to determine whether he might be able to avail himself of an insanity defense. (*Id.*) He asserts that he wrote three letters to Mr. Haley inquiring about the situation but received no response; his father then called Mr. Haley, who, according to Petitioner, stated, "I am not going to talk with Vincent until after I get the report from the doctor on his mental state because I have nothing to tell him and do not want or need to hear anything he has to say." (*Id.*) According to Petitioner, despite additional requests, Mr. Haley refused to talk to him until Haley received the psychiatric evaluation, after which Mr. Haley told Petitioner, "We can take your case to trial but I do not recommend it because there is no defense that I can present in court that would convince a jury that you are not guilty, and if we take it to trial and the jury finds you guilty, as they are certain to do, Judge Duffy would definitely give you the maximum sentence that he can so I strongly advise you to change your plea to guilty." (*Id.* at 3.) Kring asserts that Mr. Haley told him that "[t]here is no such defense as insanity at the time of the offense in the federal courts." (*Id.*) Kring states that he decided to plead guilty based on this erroneous information and that for this reason, his plea was not knowing and voluntary. (*Id.* at 3-4.)

In much the same vein, Kring argues his counsel was ineffective for "[n]ot investigating and presenting evidence of insanity, mental disease or defect, or mitigating factors." (*Id.* at 4.) Kring states that from the start of the investigation, he explained that he was in treatment at the Medical University of South Carolina until he lost his Medicaid insurance. (*Id.*) Once he lost his insurance, he asserts he was unable to pay for doctors' appointments and medication and that he was then unable to control his irresistible impulses. (*Id.* at 5.) Kring states, "[I] told Mr. Haley on several occasions about everything [I] had done to keep from having the irresistible impulses for child pornography but Mr. Haley told [me] not to mention any of that to anyone else and Mr. Haley never

3

presented it at [my] plea or sentencing hearings." (*Id*. at 6.)

On January 14, 2008, the Government filed a Motion to Dismiss, along with the affidavit of Mr. Haley. Before addressing the merits of Petitioner's motion, the court will review the standard for ineffective assistance of counsel.

*Strickland v. Washington*, 466 U.S. 668 (1984), states that a meritorious ineffective assistance of counsel claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Id*. at 687-96. A court's evaluation of counsel's performance under this standard must be "highly deferential," so as not to "second-guess" the performance. *Id*. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (internal quotation marks and citation omitted); *see also Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1476 (4th Cir. 1985). In order to establish the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." *Id*.

The record reveals that Kring is entitled to no relief. Although Kring asserts his counsel was ineffective for failing consider and advise him about the possibility of an insanity defense, the record indicates that Mr. Haley did in fact consider such a defense. The record reveals that on February 24, 2005, during Kring's arraignment, Mr. Haley made a motion for a psychiatric exam. (*See* Doc.

4

No. 6.) On that same day, Magistrate Judge Kosko signed an Order for Psychiatric Evaluation. (Doc. No. 10.) This Order states,

> It appears from the facts alleged in the motion that the defendant may presently suffer from a mental disease or defect which would render him mentally incompetent to the extent that he is unable to understand the nature or consequences of the proceeding against him or to assist properly in his defense. It also appears from these facts it appears [sic] it is appropriate for an evaluation to take place to determine the existence of insanity at the time of the offense. Furthermore, it appears from these facts it is appropriate that the evaluation will also determine whether the defendant is in need of treatment and whether he suffers from diminished capacity.

(Order at 2.) The Order

> ORDERED that upon completion of the examination as herein requested, the examiner(s) prepare a full report, such report to include all of the following:
> (1) the defendant's history and present symptoms;
> (2) a description of the psychiatric, psychological and medical tests that were employed and their results;
> (3) the examiner's findings; and;
> (4) the examiner's opinion as to diagnosis, prognosis and whether the defendant is suffering from a mental disease or defect rendering the defendant mentally incompetent to understand the nature and consequences of the proceeding or to assist in [his] defense.
> (5) the examiner's opinion as to whether the defendant, at the time of the offense was insane.
> (6) the examiner's opinion as to whether the defendant is in need of treatment.
> (7) the examiner's opinion as to whether, at the time of the offense, [the defendant] was suffering from diminished capacity.

(*Id*. at 3.)

The record thus reveals that Mr. Haley moved for Kring to be evaluated to determine whether he was insane at the time of the offense. Mr. Haley's affidavit also states, "The undersigned moved to have the Bureau of Prisons . . . determine if Mr. Kring was competent to stand trial **and** whether Mr. Kring was insane at the time of the offense." (Haley Aff. at 1.) Mr. Haley's affidavit further indicates that the Bureau of Prisons ("BOP") found that Kring does not suffer from a mental

5

disease or defect, and with respect to mental state at the time of the offense, the BOP determined "there is no indication that he was suffering from a mental disease or defect that would have impaired his ability to appreciate the nature and quality or wrongfulness of his actions." (*Id*. at 2.) Mr. Haley's affidavit states that he provided a copy of the BOP's report to Kring and that he never told Kring there was no such thing as an insanity defense in federal court. (*Id*.) Furthermore, Mr. Haley states that "the reason the undersigned moved to have the Defendant evaluated was to determine if the Defendant was competent and whether an insanity defense existed." (*Id*.)

Petitioner is not able to establish that counsel was ineffective, as counsel did in fact explore the possibility of an insanity defense and moved to have Kring evaluated for insanity at the time of the offense. While counsel may be ineffective for failing to investigate an insanity defense, *see Wood v. Zahradnick*, 578 F.2d 980 (4th Cir. 1978), the record clearly reveals Mr. Haley investigated this defense. Petitioner is thus not able to establish counsel's performance was deficient. *See Wilson v. Greene*, 155 F.3d 396, 403 (4th Cir. 1998) ("In May, counsel had received Dr. Killian's report concluding that Wilson was not mentally ill at the time of the offense. To be reasonably effective, counsel was not required to second-guess the contents of this report."); *cf. United States v. Cintron*, 163 F.3d 599, at *2 (4th Cir. 1998) (unpublished table decision) (stating, in the context of an appeal of convictions, that the defendant did not receive ineffective assistance of counsel because the record revealed the attorney "determined that an insanity defense would be unavailing based upon his investigation of the crime, Cintron's methodical approach to the robbery, Cintron's detailed confession to the police, and Cintron's state of mind at the time of the crime. Indeed, defense counsel's determination that Cintron could not credibly assert an insanity defense was supported by Cintron's subsequent mental evaluations."). Because Petitioner cannot show counsel's

performance was deficient in this regard, he is entitled to no relief on the argument that counsel was ineffective for failing to pursue an insanity defense.

Kring next argues that his counsel was ineffective because he was unresponsive and refused to talk with Kring until the results of the evaluation were available. Mr. Haley's affidavit contradicts these asserted facts; Mr. Haley states that he provided Defendant with a copy of the BOP's reports and consulted with Kring on numerous occasions "[w]hen it became clear the Defendant was both competent and sane." (Haley Aff. at 2.) Even if Mr. Haley declined to speak with Kring until the results of the BOP's psychiatric evaluation was available, such fact would not indicate Kring's counsel was constitutionally ineffective. Assuming counsel's performance in failing to answer Kring's letters was deficient, Kring can establish no prejudice as a result. In short, Kring's counsel ensured that Kring received a proper psychiatric evaluation, and Kring has not alleged any prejudice as a result of counsel's alleged failure to respond to his inquiries prior to receiving the psychiatric evaluation. *See United States v. Masters*, 976 F.2d 728, at *2 (4th Cir. 1992) (unpublished table decision) (concluding the petitioner failed to establish ineffective assistance of counsel because he "failed to establish a reasonable possibility of a different outcome if counsel in fact were guilty of the conduct [the petitioner] alleges, such as failing to respond to phone calls"); *Myers v. Laclair*, No. Civ. 13321(NRB), 2007 WL 3254902, at *6 (S.D.N.Y. Oct. 31, 2007) ("[A] lack of response to letters and calls does not necessarily mean counsel's representation was ineffective. . . . Significantly, petitioner fails to demonstrate how different conduct might have changed the outcome. Accordingly, petitioner fails to show that the conduct, if it occurred, was prejudicial."); *Scott v. Wheeler*, No. Civ.A. 705CV00057, 2005 WL 1388912, at *3 (W.D. Va. June 10, 2005) (granting respondent's motion to dismiss § 2254 action in part because although the petitioner alleged

ineffective assistance of counsel for failure to respond to letters and phone calls before her guilty plea, the petitioner entered a knowing and voluntary guilty plea and thus could not demonstrate her attorney's errors affected the outcome of her case). Because Kring cannot establish prejudice as a result of Mr. Haley's alleged failure to respond to letters and phone calls, Kring is not entitled to relief on this ground.

Kring last argues that his counsel was ineffective for failing to investigate and present evidence of insanity, mental disease or defect, or mitigating factors. (*See* Pet. at 4.) As noted above, however, Mr. Haley did investigate Kring's competency to stand trial and whether he was insane at the time of the offense. As the Government notes in its Motion to Dismiss, there simply was no evidence for Mr. Haley to present that Kring was insane or suffered from diminished capacity. (*See* Mot. to Dismiss at 4.) Furthermore, to the extent Kring argues that his counsel was ineffective for failing to present mitigating evidence, the record itself contradicts Kring's argument. At the sentencing hearing, Mr. Haley presented evidence that Kring lost his Medicaid insurance "which pays for the medications that are keeping him off the [peer] to [peer] file sharing networks; keeping him from downloading the child porn." (Sentencing Tr. 12:11-12:14.) Mr. Haley further stated, "Mr. Kring is medicated. It's all in those records, and he loses that Medicare and Medicaid and he cannot pay for that medication and those urges take over." (Sentencing Tr. 12:23-12:25.) In addition, Mr. Haley pointed out that Kring suffers from Prader-Willie Syndrome and that there is no evidence Kring has ever acted on his fantasies (Sentencing Tr. 14:5-14:7; 14:21.) Mr. Haley also argued that the statutory minimum sentence was sufficient. (Sentencing Tr. 16:22-17:3.) When Kring spoke, he explained that he lost his Medicaid insurance because he did not receive the financial forms in time to be able to continuously receive Medicaid. (Sentencing Tr. 18:1-20:3.)

Having examined the transcript of the sentencing hearing, it appears that all the evidence Kring argues Mr. Haley failed to present to the court as mitigating evidence was, in fact, presented. Contrary to Kring's assertions, this is simply not a case where defense counsel failed to investigate and present mitigating evidence. The court thus concludes that Kring can establish neither prong of *Strickland*–he cannot show his counsel's performance was deficient or that it prejudiced him. *Cf. Meyer v. Branker*, 506 F.3d 358, 371-72 & n.2 (4th Cir. 2007) (concluding counsel's decision not to offer mental health mitigation testimony did not constitute objectively unreasonable performance under *Strickland*, in light of the fact that counsel had considered presenting it but decided not to after "carefully evaluating the outcome of Meyer's two previous sentencing trials, and the impact psychiatric testimony had on jurors in those cases").

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that the Government's Motion to Dismiss is **GRANTED**.

**AND IT IS SO ORDERED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**April 23, 2008**

## NOTICE OF RIGHT TO APPEAL

Petitioner is hereby notified that he has the right to appeal this Order within sixty (60) days from the date hereof, pursuant to Federal Rules of Appellate Procedure 3 and 4. *See* Fed. R. App. P. 3-4.